UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CRIMINAL ACTION NO. 4:11CR-00002-JHM**

**UNITED STATES OF AMERICA**                                                       **PLAINTIFF**

**VS.**

**JONATHAN LEMONS**                                                             **DEFENDANTS**
**and GERMAINE PRICE**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on motions by Defendants, Jonathan Lemons and Germaine Price, to suppress the evidence obtained as a result of a search of a residence in Daviess County, Kentucky, on August 20, 2010 [DN 132, DN 134, DN 139]. On October 6, 2011, a suppression hearing was held. The parties filed supplemental briefs [DN 160, DN 161, DN 165]. Fully briefed, this matter is ripe for decision. For the reasons that follow, Defendants' motions are **DENIED**.

**I. FACTS**

Defendants, Jonathan Lemons and Germaine Price[1], along with eight other defendants, are charged with conspiracy to possess with intent to distribute and distribution of cocaine and cocaine base. Defendants were arrested on August 20, 2010, following the execution of a search warrant at a trailer located at 6895 Hwy 2830, Lot 28, Daviess County, Kentucky. On August 20, 2010, the Owensboro Police Department Street Crimes Unit along with other members of the Drug Enforcement Agency executed a search warrant for the residence in question. The search warrant was signed by a state district court judge and accompanied by an Affidavit for Search Warrant by

---

[1] Both the Government and Defense Counsel spell Mr. Price's first name "Jermaine." However, the Superseding Indictment spells Mr. Price's first name "Germaine." The Court defers to the way it has been spelled in the Superseding Indictment.

1

Sergeant J.D. Winkler of the Owensboro Police Department. The following facts were set forth in the affidavit.

In May of 2010, the Owensboro Police Department, acting with the Henderson Police Department and the Drug Enforcement Administration ("DEA"), began investigating co-defendant Edwin Huff and others from the Atlanta, Georgia area for distributing cocaine. The Street Crimes Unit received anonymous tips concerning unknown black males from the Atlanta, Georgia, area selling crack cocaine out of a residence on Sycamore Street in Owensboro, Kentucky. Officers with the Owensboro Police Department began surveillance of the residence and also received additional information from the DEA, the Henderson Police Department, and a confidential informant. Information obtained by the officers indicated that seven to eight individuals from the Atlanta area were staying at the Sycamore Street residence and were reported to be selling cocaine from that residence.

In July of 2010, the confidential informant and police surveillance revealed that co-defendant Edwin Huff and an individual identified as "Kane" moved out of the Sycamore Street residence into a trailer park in rural Daviess County. Information also indicated that Huff and Kane would travel into Owensboro to make cocaine deliveries in a 1989 Tan Ford Crown Victoria 4-door sedan. The officers also had obtained the license plate number of the vehicle. Based upon this information, members of the Street Crimes Unit began driving through trailer parks in Daviess County searching for the vehicle in question. On August 13, 2010, police found the vehicle registered to Huff located in the East Wood Trailer Park, Lot 28, in Daviess County, Kentucky. Officers also located a rental vehicle registered to Metro Rental Systems located in Decatur, Georgia.

In the early morning hours of August 20, 2010, Detective Winkler and other members of the Street Crimes Unit conducted a trash pull of the residence in question. Specifically, in the Search

Warrant Affidavit Sergeant Winkler stated that:

> [O]n the early morning hours of August 20, 2010, he and other members of the Street Crimes Unit conducted a trash pull of the trailer residence located at the address listed above, being lot 28, whose trash had been abandoned and set out for pick-up by a Sanitation company. Affiant states that once the trash had been set out and abandoned, he and other members of law enforcement then sifted through the trash and discovered approximately 2 empty plastic baggies with the corners missing, a corner baggie, an empty plastic baggie containing possible cocaine residue, 2 marijuana stems, Hollowed out Blunt tobacco, empty dog food packages, a cut up Georgia Driver License with the name and number missing, but with a physical description of a Black Male, 6'0, over 200 lbs, bald, with a corrective lens restriction. Affiant states that this Georgia drivers license matches the physical description of the unknown Black male who goes by the street name of "Kane." Affiant states that this contraband described above, found today, is indicative of on-going controlled substance activity at the residence located at 6895 Hwy 2830, Lot 28, Owensboro, Daviess County, Kentucky.

(Affidavit for Search Warrant at 3.) Sergeant Winkler further stated that based upon his training and experience as a narcotic detective, "individuals who traffic or receive crack cocaine and marijuana commonly do so by placing them in a corner of plastic baggies, tying them off, and then pulling the remaining baggie off, therefore allowing the individual baggie full of controlled substances to be sold . . . ." (Id.)

## II. DISCUSSION

Defendants raise three challenges to the search of the residence in question. Defendants Lemons and Price both challenge the search of the trash prior to the issuance of the search warrant. Defendant Lemons also asserts that the affiant made false and/or misleading statements in the affidavit in support of the search warrant and that the warrant was unsupported by probable cause.

**A. Trash Pull**

Defendants argue that the warrantless search and seizure of the trash violated their Fourth Amendment rights. Specifically, Defendants argue that the trash did not qualify as abandoned property because the Government failed to establish that the garbage was outside the confines of the

3

residence's curtilage.

There is no reasonable expectation of privacy in trash left at the curb. California v. Greenwood, 486 U.S. 35, 40-43 (1988); United States v. Spotted Elk, 548 F.3d 641, 653 (8th Cir. 2008) "One who places trash or garbage at the street for collection by a sanitary worker has no reasonable expectation of privacy in that trash, as a result of which there is no Fourth Amendment violation for a warrantless search of that garbage and seizure of any evidence therein." United States v. Reynolds, 2009 WL 1588532, *1 (E.D. Tenn. June 4, 2009). Furthermore, "[e]vidence from a trash pull, standing alone, can provide sufficient probable cause for issuance of the search warrant." United States v. Lomeli, 2010 WL 5798589, *10 (D. Neb. Dec. 9, 2010) (citing United States v. Briscoe, 317 F.3d 906, 908-09 (8th Cir. 2003)).

In the present case, the area from which the trash was collected was not an area which "'harbors those intimate activities associated with domestic life and the privacies of the home." United States v. Kearns, 2006 WL 2668535, *4 (N.D. Ga. September 15, 2006)(citing United States v. Hall, 47 F.3d 1091 (11th Cir. 1995)). The trash was placed on the edge of the gravel road. In fact, Sergeant Winkler testified that he and Detective Stokes stood on the gravel road to conduct the trash pull. While only located approximately 15 feet from the front corner of the trailer, the area in which the trash was placed was not enclosed, not shielded from view, and in an area to which any visitor or the public would have had access. "It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." Greenwood, 486 U.S. at 40. In light of these facts, the Court concludes that the residents of the trailer objectively abandoned the trash by placing it at a location from the trailer where it would be reasonable for the trash collector to take and, therefore, the residents did not have a reasonable expectation of privacy in the items discarded. Accordingly, the items

4

recovered from the trash could lawfully be used to support a search warrant application.

   **B. False statements or omissions in Affidavit**

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. "When probable cause is required, it is an obvious assumption that there will be a truthful showing of probable cause." United States v. Witherspoon, 2010 WL 724663, *2 (W.D. Ky. Feb. 25, 2010)(citing Franks v. Delaware, 438 U.S. 154 (1978)). In challenging the veracity of statements contained in the affidavit, the Defendant must prove by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks, 438 U.S. at 155-56. "If this is established by the defendant, then the false material must be set aside in determining whether the remaining content is sufficient to establish probable cause." Witherspoon, 2010 WL 724663, *2 (citing Franks, 438 U.S. at 156.). If the remaining material is insufficient to establish probable cause, the search warrant must be voided and the evidence obtained as a result of the search excluded as if probable cause was lacking on the face of the warrant." Id.

Lemons argues that the search warrant affidavit was insufficient to establish probable cause because it contained false and misleading information by affiant, Sergeant Winkler. Specifically, Lemons argues that Sergeant Winkler was untruthful when he represented to the state district court judge that illegal drugs were conclusively found in the trash to Lot 28, and therefore, drugs could be found within the residence. Lemons maintains that Sergeant Winkler did not conduct a field test of the drugs and was instead relying on his experience and training in evaluating the substances found. Lemons also argues that Sergeant Winkler led the district judge to believe that he witnessed the occupants take the trash and abandon it which, in fact, did not occur. Lemons contends that after excluding these false statements in the affidavit, the remaining material is insufficient to establish

5

probable cause.

Considering the testimony of Sergeant Winkler at the suppression hearing, along with the photographs, video of the exterior of the trailer, and affidavit in question, the Court finds that Lemons has not proved by a preponderance of the evidence that the statements of Sergeant Winkler in the search warrant affidavit were knowingly and intentionally false or made with reckless disregard for the truth. First, contrary to the representation of Lemons, Sergeant Winkler did not conclusively state that he located drugs in the trash toter. Instead, Sergeant Winkler stated that he "discovered approximately 2 empty plastic baggies with the corners missing, a corner baggie, an empty plastic baggie containing possible cocaine residue, 2 marijuana stems, Hollowed out Blunt tobacco . . . ." (Search Warrant Affidavit at 3.) The affidavit does not indicate that these items were field tested. In fact, Sergeant Winkler stated that the empty plastic baggie contained *possible* cocaine residue. Clearly, these statements disclose to the district judge that the content of the trash had not been field tested.

Second, the Court does not believe that Sergeant Winkler's statement that "*once* the trash had been set out and abandoned, he and other members of law enforcement then sifted through the trash . . . ." indicates that he observed the occupants of the residence place the trash out for pick-up. (Id. (emphasis added)). While perhaps a better word such as "since" could have been utilized, there has been no showing that the utilization of the word "once" by Sergeant Winkler was knowingly or intentionally false or misleading. Even assuming that the statement was misleading, this statement does not alter the probable cause determination. Whether or not Sergeant Winkler observed the occupants set the trash out for pick-up is not material to the district judge's determination of probable cause. Instead, the district judge issued the warrant based upon the evidence obtained from the search of the trash.

## C. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In determining whether an affidavit establishes probable cause to issue a search warrant, the task of the issuing magistrate or judge is to determine, given all the circumstances set forth in the affidavit before him, whether there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In order to establish probable cause to search, a warrant request "must state a nexus between the place to be searched and the evidence sought." United States v. Bethal, 245 Fed. Appx. 460, 464 (6th Cir. 2007)(internal citations omitted). "The belief that the items sought will be found at the location to be searched must be 'supported by less than *prima facie* proof but more than mere suspicion.'" Id. (quoting United States v. Johnson, 351 F.3d 254, 258 (6th Cir. 2003)).

Upon reviewing Sergeant Winkler's Affidavit for Search Warrant in its entirety, this Court finds that probable cause for the search warrant was established considering the totality of the circumstances. The affidavit reflected that the police had received information from anonymous tips, a confidential informant, and police surveillance that indicated that Edwin Huff and "Kane," along with a group of men from Atlanta, were selling drugs from a residence on Sycamore Street in Owensboro, Kentucky. Officers had determined the make, model, and license plate number of Huff's vehicle and had learned that he recently moved from the Sycamore Street location to a trailer park located in Daviess County. Officers began searching for his vehicle in numerous trailer parks in Daviess County. Upon locating his vehicle, police conducted surveillance of the residence and conducted a lawful trash pull in the early morning hours of August 20, 2010. The trash pull revealed "2 empty plastic baggies with the corners missing, a corner baggie, an empty plastic baggie

7

containing possible cocaine residue, 2 marijuana stems, Hollowed out Blunt tobacco . . . ." (Search Warrant Affidavit at 3.) Sergeant Winkler reported that given his training and experience in narcotics investigation, these items are used by individuals involved in narcotic trafficking. Under these circumstances, there is a sufficient factual nexus between the evidence of drugs and drug trafficking found in the trash and the residence to support the district judge's finding that there was "fair probability that contraband or evidence of a crime" would be located in the residence. Gates, 462 U.S. at 238.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motions by Defendants, Jonathan Lemons and Germaine Price, to suppress the evidence obtained as a result of a search of a residence in Daviess County, Kentucky, on August 20, 2010 [DN 132, DN 134, DN 139] are **DENIED**.

cc: counsel of record
    US Marshal
    US Probation